


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 03-23214-CIV-LENARD

**ROLLS-ROYCE PLC, ROLLS-ROYCE, AB, ROLLS-ROYCE NORTH AMERICAN HOLDINGS, INC., ROLLS-ROYCE COMMERCIAL MARINE, INC., ALSTOM POWER CONVERSION SA, ALSTOM, INC., ALSTOM POWER CONVERSION, INC., and MARINE SERVICE PARTNERS, INC.,**




Petitioners,

vs.



**ROYAL CARRIBBEAN CRUISES LTD., CELEBRITY CRUISES, INC., MILLENNIUM INC., INFINITY INC., SUMMIT INC., and CONSTELLATION, INC.,**

Respondents.
_______________________________________/

**OMNIBUS ORDER**
**GRANTING MOTION TO REMAND STATE COURT ACTION AND DISMISSING PETITION TO COMPEL ARBITRATION FOR LACK OF SUBJECT MATTER JURISDICTION**

**THIS CAUSE** is before the Court upon three related motions. On December 24, 2003, Royal Caribbean Cruises Ltd., et al. filed a Motion to Remand and Dismiss (D.E. 7), Memorandum in Support thereof (D.E. 8), and the Declaration of Timothy Nicholas Young (D.E. 20, 21). On January 26, 2004, Alstom et. al. filed a Memorandum in Opposition (D.E. 23) and Rolls-Royce et. al. filed a Memorandum in Opposition (D.E. 25). On February 19, 2004, Royal Caribbean Cruises Ltd., et al. filed a Reply. (D.E. 31.) On March 3, 2004, Royal Caribbean Cruises Ltd., et al. filed a further Declaration of Timothy Nicholas Young

(D.E. 34). On March 2, 2004, the Parties filed a Joint Sur-Reply Memorandum (D.E. 33). On March 5, 2004, Royal Caribbean filed a Supplemental Memorandum Addressing New Authority (D.E. 36). On April 27, 2004, the Parties filed a Joint Notice of Supplemental Authority (D.E. 39).

Also before the Court is both the Rolls-Royce et. al. Motion to Dismiss for Improper Venue and to Compel Arbitration (Case No. 03-23223-CIV, D.E. 8), filed on December 8, 2003, and the Alstom et. al. Motion to Compel Arbitration (Case No. 03-23223-CIV, D.E. 4), Memorandum of Law in Support thereof (D.E. 5), and Appendix (D.E. 6, 7), filed on December 8, 2003.

## I. Procedural and Factual Background

### *A. Consolidation*

On December 4, 2003, Rolls-Royce et. al. and Alstom et. al. filed a Petition to Compel Arbitration before this Court. (Case No. 03-23214-CIV, D.E. 1.) Rolls-Royce et. al. and Alstom et. al. jointly petitioned to compel arbitration, alleging rights under the Convention on the Recognition of Foreign Arbitral Awards, codified at 9 U.S.C. §§ 201-208. Id. at 2. Rolls-Royce et. al. and Alstom et. al. alleged the right to arbitrate the issues raised by Royal Caribbean Cruises et. al. in a prior lawsuit filed in Florida state court. Id. at 2.

On December 4, 2003, the state court action filed by Royal Caribbean Cruises et. al. was removed by Rolls-Royce et. al. and Alstom et. al. to federal court. (Case No. 03-23223-CIV, D.E. 1, Notice of Removal.) The state court action was removed on the basis that the claims alleged by Royal Caribbean in its Complaint related to and arose from

multiple written agreements entered into by Royal Caribbean containing arbitration clauses requiring that Royal Caribbean arbitrate such issues. Id. On December 9, 2003, the Court issued an order consolidating the removal case (Case No. 03-23223[1]) with the Petition to Compel Arbitration (Case No. 03-23214). (Case No. 03-23223, D.E. 9.)

### *B. Parties*

There are three groups of related corporations before the Court which will be referred to as: Royal Caribbean Respondents, Rolls-Royce Petitioners and Alstom Petitioners. The Royal Caribbean Respondents consist of Royal Caribbean Cruises, Ltd. and its subsidiary corporations: Celebrity Cruises, Inc., Millennium Inc., Infinity Inc., Summit Inc. and Constellation, Inc. (D.E. 8, Mem. Mot. to Remand at 2.) Subsidiary Celebrity Cruises, Inc. is the operator of the Millennium class cruise ships. Id. Subsidiaries Millennium Inc., Infinity Inc., Summit Inc. and Constellation, Inc. are the owners of the four cruise ships MILLENNIUM, INFINITY, SUMMIT and CONSTELLATION respectively. Id. Royal Caribbean purchased Mermaid pod propulsion systems for the four cruise ships MILLENNIUM, INFINITY, SUMMIT and CONSTELLATION from subsidiaries of Rolls-Royce and Alstom.

Rolls-Royce and Alstom subsidiaries are joint venturers in the production of the Mermaid pod propulsion system. Id. The Rolls-Royce Petitioners include Rolls-Royce PLC, the English parent corporation, and its subsidiaries, Rolls-Royce North American Holdings,

---

[1] All citations in this Order are to the docket entries in the consolidated case, 03-23214-CIV, unless otherwise noted.

Inc., Rolls-Royce Commercial Marine, Inc., and Rolls-Royce AB, who allegedly were involved in the design and construction of the Mermaid pod propulsion system. Id. The Alstom Petitioners include Alstom Power Conversion, S.A., believed to be responsible for the design and construction of the Mermaid pod propulsion system, Alstom Power Conversion Inc., Marine Service Partners, Inc. and Alstom Marine U.S.[2], believed to be Florida based divisions or subsidiaries of Alstom. Id.

The Court notes that there are corporations who are not parties to this action but who are nonetheless related to this dispute. Chantiers de l'Atlantique S.A. ("CAT") is a shipbuilder who entered into four agreements with Royal Caribbean Cruises, Ltd. to build the four vessels, MILLENNIUM, INFINITY, SUMMIT and CONSTELLATION. (Case No. 03-23223, D.E. 5, Alstom Mem. Mot. to Compel Arbitration at 2-3.) CAT is also an Alstom subsidiary.[3] Id. at 2. The four agreements, executed by CAT and Royal Caribbean to build the vessels MILLENNIUM, INFINITY, SUMMIT and CONSTELLATION, contain arbitration clauses that are the basis for Rolls-Royce and Alstom's Petition to Compel Arbitration.

### *C. Contracts Re. Mermaid Pod Propulsion Systems*

#### *C1. Millennium Contracts*

The four agreements to build the vessels MILLENNIUM, INFINITY, SUMMIT and

---

[2] It is disputed whether Alstom Marine U.S. is a corporation subject to suit or a division within an Alstom subsidiary.

[3] The Court further notes that although several Alstom subsidiaries are parties to this action, the Alstom parent corporation is not a party.

CONSTELLATION were executed by CAT and Royal Caribbean on March 16, 1998. Id. at 3. The agreements, called here in "the Millennium Contracts," provided a detailed blueprint for the construction of the ships including but not limited to: (1) specifications for a pod propulsion system, (2) ship speed requirements, (3) diesel generator stipulations for the supply of electrical power to the pod propulsion system, (4) warranty and remedy provisions, and (5) price adjustment provisions. Id. at 3-4. The Millennium Contracts permit CAT to hire subcontractors to build the vessels, taking into account Royal Caribbean Cruises preferences. Id. at 4.

Each of the Millennium Contracts contain an arbitration clause requiring Royal Carribean and CAT to arbitrate any dispute arising out of or related to the ship building contract. (Case No. 03-23223, D.E. 7, Alstom Appendix at Ex. A, B, C & D.) The arbitration clauses state in pertinent part,

> In the event that any dispute or difference may arise or claim be made by and between the parties hereto out of or in relation to or in connection with this Contract and the same cannot be resolved by the parties themselves, it shall be settled as follows:
>
> 1.1 In the event of any dispute difference or claim arising out of, or relating to or in connection with this Contract, that same shall be submitted to and settled by arbitration by three (3) arbitrators .....
>
> 1.2 Such arbitration shall be conducted in Geneva in the English language in accordance with the Arbitration Rules of the United Nations Commission on International Trade Law (UNCITRAL) Arbitration Rules (as adopted December 15, 1976)....
>
> 1.3 The arbitration tribunal shall be entitled to determine in its award which party shall bear the expenses of the arbitration, or the proportion of such expenses which each party shall bear.

> 1.4 The decision or award of the arbitrators shall be final and binding upon both parties, the parties waiving in advance and in any case the right of appeal against decision or award.
> 1.5 Judgment on any decision or award may be entered in any court of competent jurisdiction...

Id. at Ex. A at Article XIV, Disputes and Arbitration at 30.

*C2. Summit and Constellation Agreements*

After two of the ships, MILLENNIUM and INFINITY, were delivered, Royal Caribbean alleged that the Mermaid pod propulsion systems on the vessels did not meet performance requirements. (See Case No. 03-23223-CIV, D.E. 1, Compl. at ¶¶ 56-57, 74.) On August 31, 2001, Royal Caribbean and CAT (without conceding the allegations made regarding the Mermaid pod propulsion system) executed a "GTS Summit Agreement Regarding Mermaid Pods." (Case No.03-23223-CIV, D.E. 5, Alstom Mem. Mot. to Compel Arbitration at 5; see also D.E. 7, Alstom App. at Ex. E.) The agreement refers to the cruise liner SUMMIT and it specifically states that the subcontractors referred to within the agreement are Rolls-Royce AB and Alstom Power Conversion. Id. The agreement further states that the vessel SUMMIT is the third vessel in a series of four sister vessels, two of which, the MILLENNIUM and INFINITY, have already been delivered. Id. The agreement next states that the MILLENNIUM and INFINITY have suffered accelerated deterioration and failures in services of their Mermaid pod propulsion systems. Id. In the agreement, Royal Caribbean agrees to accept delivery of SUMMIT, despite the alleged pod deficiencies, and in exchange the shipbuilder CAT agrees (1) to extend the guarantees and warranties on the vessels MILLENNIUM, INFINITY and SUMMIT; (2) to investigate and to work closely

with the subsidiaries to address the alleged pod deficiencies, and (3) to procure the manufacture, sale and delivery from the subsidiaries of additional spare pods for 5.3 million. Id. The Summit Agreement also contains liquidated damages provisions. Id. The Summit Agreement includes the following arbitration clause:

> This agreement shall be governed by and construed in accordance with English law. Any dispute arising out of or in connection with this agreement shall be referred to arbitration in accordance with the arbitration clause in the SUMMIT contract.

Id.

On May 11, 2002, Royal Caribbean and CAT (without conceding the allegations made regarding the Mermaid pod propulsion system) executed a "GTS Constellation Agreement Regarding Mermaid Pods." (Case No.03-23223-CIV, D.E. 5, Alstom Mem. Mot. to Compel Arbitration at 6; see also D.E. 7, Alstom App. at Ex. F.) The agreement refers to the cruise liner CONSTELLATION and it specifically states that the subcontractors referred to within the agreement are Rolls-Royce AB and Alstom Power Conversion. Id. The agreement further states that the vessel CONSTELLATION is the fourth vessel in a series of four sister vessels, three of which, the MILLENNIUM, INFINITY and SUMMIT, have already been delivered. Id. The agreement next states that the MILLENNIUM, INFINITY and SUMMIT have suffered accelerated deterioration and failures in services of their Mermaid pod propulsion systems. Id. In the agreement, Royal Caribbean agrees to accept delivery of CONSTELLATION, despite the alleged pod deficiencies, and in exchange the shipbuilder CAT agrees (1) to extend the guarantees and warranties on the vessel CONSTELLATION;

(2) to investigate and to work closely with the subsidiaries to address the alleged pod deficiencies, and (3) to procure the manufacture, sale and delivery from the subsidiaries of an additional spare pod for 3.4 million. Id. The Constellation Agreement also contains liquidated damages provisions. Id. The Constellation Agreement includes the following arbitration clause:

> This agreement shall be governed by and construed in accordance with English law. Any dispute arising between RCCL [Royal Caribbean Cruises, Ltd.] and the Builder [CAT] out of or in connection with this agreement shall be referred to arbitration in accordance with the arbitration clause in the CONSTELLATION contract.

Id.

### *D. Royal Caribbean Claims Against Rolls-Royce and Alstom in State Complaint*

On August 7, 2003, Royal Caribbean et. al. filed a thirteen (13) count[4] Complaint against the Rolls-Royce and Alstom subsidiaries in Florida state court. (Case No. 03-23223, D.E. 1, Attach. Compl.) Royal Caribbean alleges that the Rolls-Royce and Alstom joint venture deliberately misinformed and misled Royal Caribbean about the design, development, testing, deployment, quality, performance, reliability, cost-efficiency and operational benefits of the Mermaid Pod Propulsion System in order to induce Royal Caribbean to purchase the pods. Id. at ¶¶ 42-54. Royal Caribbean further alleges that but for

[4] Royal Caribbean alleges the following claims: (1) breach of express warranties; (2) breach of implied warranties of fitness for particular purpose; (3) breach of implied warranty of merchantability; (4) negligent misrepresentation; (5) fraud in the inducement; (6) fraudulent misrepresentation; (7) deceptive and unfair trade practices; (8) negligent testing, inspecting and repairing and/or servicing; (9) breach of warranty of workmanlike performance; (10) negligent professional services in the design, construction testing, inspection, diagnosis and repair of the pods; (11) false, misleading and deceptive advertising and sales; (12) tortious interference with business relationships; and (13) civil conspiracy.

the false and misleading material representations made by Rolls Royce and Alstom, Royal Caribbean would not have purchased the Mermaid pods. Id. at ¶ 54. Royal Caribbean also alleges that Rolls-Royce and Alstom conspired to deceive Royal Caribbean into believing that the problems with the Mermaid pods could be addressed and hid the truth about numerous design and manufacturing defects. Id. at ¶¶ 92-104, 108-113.

***E. Petition to Compel Filed by Rolls-Royce and Alstom***

Rolls-Royce and Alstom have filed a Petition to Compel Arbitration in this Court, without waiving their rights to contest in personam personal jurisdiction, forum non conveniens or any and all other defenses, based on the arbitration clauses found in the Millennium Agreements and the Summit and Constellation Agreements. (D.E. 1.) Rolls Royce and Alstom argue that these contracts expressly require arbitration of any and all disputes that arise out of Royal Caribbean's purchase of the cruise ships MILLENNIUM, INFINITY, SUMMIT and CONSTELLATION. (See D.E. 5, 8.)

**II. Motion to Remand and Dismiss**

On December 24, 2003, Royal Caribbean Cruises Ltd., et al. filed a Motion to Remand and Dismiss (D.E. 7) and Memorandum in Support thereof (D.E. 8). In the Motion to Remand, Royal Caribbean argues that this Court lacks subject matter jurisdiction. (RCCL Mem. Mot. to Remand at 3.) This Court has an obligation to address whether it has subject matter jurisdiction, before assessing the merits of the Petitioners' Motions to Compel Arbitration.

### *A. Parties' Arguments Regarding Federal Subject Matter Jurisdiction*

Royal Caribbean notes that the only basis for federal subject matter jurisdiction in this action is the Federal Arbitration Act. Id. at 3. Royal Caribbean then argues that this Court lacks subject matter jurisdiction because there is no agreement to arbitrate in writing between Petitioners and Respondents, as required by the Federal Arbitration Act. Id. Royal Caribbean further argues that the arbitration clauses cited by Respondents were crafted to apply only to the named parties to the contract, CAT and Royal Caribbean and its assignees.[5] Id. at 4. Royal Caribbean requests therefore that the removed action be remanded to the Florida court and the Petition to Compel Arbitration be dismissed for lack of federal subject matter jurisdiction. Id.

In response, Petitioners argue that the claims filed in state court by Respondent Royal Caribbean relate to the contracts cited by Petitioners and therefore Royal Caribbean is bound by the arbitration agreements within those contracts. (D.E. 23, Alstom Mem. in Opp. at 2.) In support thereof, Petitioners cite to 29 U.S.C. § 205 conferring federal subject matter jurisdiction over state court actions that "relate to" an agreement to arbitrate. Id. at 3. Petitioners further argue that since there is a written agreement to arbitrate by Royal Caribbean this Court should not look to jurisprudence where there was no written agreement to arbitrate. Id. at 4.

Petitioners further assert that for purposes of determining whether this Court has

---

[5] In support thereof, Royal Caribbean provides the Declarations of Timothy Nicholas Young. (D.E. 20; D.E. 34.)

jurisdiction, it does not matter that Petitioners are not signatories to the contracts and/or agreements to arbitrate at issue. Id. at 5. In support thereof, Petitioners cite to Beiser v. Weyler, 284 F.3d 665 (5th Cir. 2002). Petitioners also cite to Eleventh Circuit opinions in which non-signatories to a contract were subject to a contract's arbitration clause, because the nature of the claims was inexorably intertwined with the contract. Id. at 6 (citing Olsher Metals Corp. v. Olsher, No. 03-12184, slip. op. (11th Cir. 2003)); see also id. at 8 (citing MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942 (11th Cir. 1999));see also D.E. 25, Rolls-Royce Mem. in Opp. at 12-13. Petitioners argue that in the instant case, the claims of Royal Caribbean are inexorably intertwined with the contract agreements cited by Petitioners, particularly the Summit and Constellation Agreements relating to the alleged Mermaid pod deficiencies. Alstom Mem. in Opp. at 6-7. Petitioners add that this Court should consider the federal policy favoring the enforcement of arbitration agreements, which applies with special force in an international context. (D.E. 25, Rolls-Royce Mem. in Opp. at 12.)

In Reply, Royal Caribbean asserts that the decision by the Eleventh Circuit in Czarina, L.L.C. v. W.F. Poe Syndicate, 358 F.3d 1286 (11th Cir. 2004) requires this Court to dismiss for lack of subject matter jurisdiction. (D.E. 31, Reply at 2; see also D.E. 36, RCCL Supp. Mem.) Royal Caribbean further argues that federal subject matter jurisdiction was not at issue in the cases cited by Petitioners in which non-signatories to a contract were bound by an arbitration clause contained therein. Reply at 4. Royal Caribbean points out that there is a fundamental distinction between ruling on the scope of an agreement to arbitrate and including non-signatories within its scope based on equitable doctrines, as opposed to ruling

on the scope of the application of the Convention. Id. at 8. Royal Caribbean asserts that it would not be appropriate for this Court to expand its jurisdiction beyond that conferred by statute and/or the Convention, for the sake of policy favoring arbitration of international disputes. Id. at 6. Royal Caribbean further argues that U.S. contract law theories and equitable law should not be used to require arbitration of international disputes where such domestic theories would broaden the scope of the disputes subject to arbitration beyond the scope set forth in the Convention. Id. at 8.

***B. The Convention and Enabling Statutes Conferring Federal Jurisdiction***

In 1958, Signatories to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards[6] agreed that they would enforce written agreements to submit disputes to arbitration. Specifically, the Convention in Article II provides that,

> Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

The Convention further specifies in Article II that the term "an agreement in writing" includes "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." In Article II, the Convention further requires that,

---

[6] The Convention referred to by the Court is the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards. See www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention.html.

> The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

The Federal Arbitration Act (FAA) provides for enforcement of foreign arbitration agreements through the ratification of the Convention. 9 U.S.C. § 201[7], et. al.. The FAA provides that commercial agreements fall under the Convention:

> An arbitration agreement ... arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract or agreement described in section 2 of this title, falls under the Convention.[8]

9 U.S.C. § 202. There are two provisions of the FAA conferring jurisdiction on federal district courts. Under the FAA, federal district courts have original jurisdiction over actions "falling under the Convention." 9 U.S.C. § 203. Also, the FAA provides for removal to a federal district court as follows,

> Where the subject matter of an action or proceeding pending in a State Court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending...

9 U.S.C. § 205 (emphasis added).

---

[7] Title 9 U.S.C. § 201 states, "The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter."

[8] The Convention allows Contracting States to declare that they will apply the Convention only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial. Convention, at art. I., sec. 3.

The Eleventh Circuit has advised that to determine whether a district court has jurisdiction under the FAA, a court must determine whether the agreement at issue falls under the Convention by looking to the language of the Convention. Czarina, L.L.C. v. W.F. Poe Syndicate, 358 F.3d 1286, 1291 (11th Cir. 2004). The Eleventh Circuit states that the Convention imposes prerequisites on a party asking the court to compel arbitration; the party seeking to compel arbitration must bring the court the written agreement. Id. Furthermore, the written agreement must comply with Article II of the Convention which states that, "the term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement signed by the parties or contained in an exchange of letters or telegrams." Id. Where a party fails to satisfy the agreement in writing requirement, dismissal for lack of subject matter jurisdiction is appropriate. Id.

***C. Analysis of Federal Subject Matter Jurisdiction***

It is undisputed that the only basis for federal subject matter jurisdiction in this action is the FAA. Royal Caribbean argues that this Court lacks subject matter jurisdiction because there is no agreement to arbitrate in writing between Petitioners Rolls-Royce/ Alstom and Respondent Royal Caribbean as required by the FAA. (Mot. to Remand at 3.) In assessing Royal Caribbean's argument, the Court notes that the Eleventh Circuit in Czarina reaffirmed the basic principle that "arbitration is a creature of contract." Czarina, L.L.C., 358 F.3d at 1293. The Eleventh Circuit further stated that an agreement in writing to arbitrate is a prerequisite to a federal court taking jurisdiction under the FAA. Id. at 1291. Most importantly, the Eleventh Circuit instructed that this Court look to the language of the

Convention in determining whether there is an agreement in writing conferring jurisdiction. Id.

Having reviewed the language of the Convention, the Court finds that it contemplates an agreement in writing signed by the parties that appear before the court to compel arbitration. Article II begins by stating that signatories to the Convention shall recognize an "agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen." Id. at art. II, sec. 1 (emphasis added). Article II of the Convention then specifically states that by the term "agreement in writing," the Convention refers to an agreement "signed by the parties." Convention, at art. II, sec. 2. Finally, in describing the power to compel arbitration, the Convention states, "the court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, at the request of one of the parties, refer the parties to arbitration..." The Court therefore finds that the Convention requires an agreement between the parties before the court seeking to compel arbitration. Because there is no agreement signed by Petitioners Rolls-Royce/ Alstom and Respondent Royal Caribbean to arbitrate disputes arising from their business relationship, there is no "agreement in writing, signed by the parties" as required by the Convention. Accordingly, this Court lacks subject matter jurisdiction.

In reaching this determination, the Court has considered Petitioners arguments that the contracts cited by Petitioners relate to the claims of Royal Caribbean in the Florida state court action. (D.E. 23, Alstom. Mem. in Opp. at 2.) The Court notes, however, that the text

of the statute conferring removal jurisdiction provides that, "where the subject matter of an action or proceeding pending in a State Court relates to an arbitration agreement or award falling under the Convention, the defendant or defendants may [remove to federal district court]." 28 U.S.C. § 205. The statutory provision cites to the Convention in defining the scope of the district court's jurisdiction over removed actions. As previously stated by the Court, the Convention requires an agreement in writing "signed by the parties."[9] Convention at art. II, sec. 2. Accordingly, the Court finds that the mere fact that the contracts cited by Petitioners relate to the claims of Royal Caribbean is insufficient to confer subject matter jurisdiction.[10]

The Court finds unpersuasive Petitioners' arguments that it should not matter that they are not signatories to the contracts and/or agreements to arbitrate, from which they seek to benefit. (Alstom Mem. in Opp. at 5-6; Rolls-Royce Mem. in Opp. at 12-13.) In the cases cited by Petitioners in which non-signatories to a contract are bound by an arbitration clause agreement, federal subject matter jurisdiction was not at issue. See e.g., MS Dealer Serv.

---

[9] Article II requires either an agreement in writing signed by the parties or an exchange of letters or telegrams evidencing an agreement to arbitrate.

[10] In reaching this determination, the Court has reviewed the decisions of Circuit Courts that have interpreted the FAA statutory provision as conferring jurisdiction to claims relating to an arbitration clause in an agreement to which one or more of the parties is not a signatory. See e.g., Sphere Drake Ins. PLC v. Marine Towing, Inc., 16 F.3d 666 (5th Cir. 1994); Beiser v. Weyler, 264 F.3d 665 (5th Cir. 2002); Sarhank Group v. Oracle Corp., 404 F.3d 657 (2d Cir. 2005). Although the Court has reviewed these opinions, this Court is bound by Eleventh Circuit jurisprudence. Czarina clearly requires this Court to look to the text of the FAA and the language of the Convention in determining whether it has subject matter jurisdiction. Czarina, L.L.C., 358 F.3d at 1291. The Convention requires that the party seeking to compel arbitration be a signatory to the arbitration agreement.

Corp. v. Franklin, 177 F.3d 942 (11th Cir. 1999); Olsher Metals Corp. v. Olsher, No. 03-12184, slip. op. (11th Cir. 2003). This Court finds it inappropriate to expand the scope of federal jurisdiction, from the scope set forth in the text of the FAA and the Convention, based on principles of federal common as stated in the opinions cited by Petitioners.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that

1. The Motion to Remand (D.E. 7), filed on December 24, 2003, is **GRANTED.** The state court action filed by Royal Caribbean (Case No. 03-23223-CIV) is **REMANDED** to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County.

2. The Petition to Compel Arbitration (D.E. 1), filed on December 4, 2003, is **DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.**

3. **THIS CASE IS CLOSED.**

4. **ALL PENDING MOTIONS ARE DENIED AS MOOT.**

**DONE AND ORDERED** in Chambers in Miami, Florida, this 7 day of July, 2005.

Joan A. Lenard
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**

cc: U.S. Magistrate Judge Theodore Klein

All counsel of record.

**03-23214-CIV-LENARD**

**03-23223-CIV-LENARD**